BOREN, OSHER & LUFTMAN LLP
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
222 N. Sepulveda Blvd., Suite 2222
El Segundo, California 90245
Tel: (310) 322-2220
Fax: (310) 322-2228

KILGORE & KILGORE, PLLC
John H. Crouch, IV (TX SBN 00783906) (pro hoc vice forthcoming)
E-mail: jhc@kilgorelaw.com
Christine A. Hopkins (SBN 240248)
E-mail: cah@kilgorelaw.com
3109 Carlisle St., Suite 200
Dallas, TX 75204
Tel: (214) 969-9099
Fax: (214) 953-0133

Attorneys for Plaintiff, the Classes, and
Aggrieved Employees

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LEVERAGE, and MICHAEL LENTINI, as individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAEGER PELLET GRILLS LLC, and XEN 2, INC.,<br><br>Defendants. | Case No.: 3:16-cv-784<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT:<br><br>(1) FAILURE TO PAY OVERTIME WAGES (Cal. Labor Code §§ 204, 510, 558, 1194, 1198)<br><br>(2) FAIR LABOR STANDARDS ACT VIIOLATIONS (29 U.S.C. §201, et seq.);<br><br>(3) MEAL & REST PERIOD VIOLATIONS (Cal. Labor Code §§ 226.7, 512, 558);<br><br>(4) WAGE STATEMENT PENALITES (Cal. Labor Code §226, et seq.);<br><br>(5) UNFAIR COMPETITION (Cal. Bus. & Prof. Code §17200, et seq.)<br><br>DEMAND FOR JURY TRIAL |

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 1**

_____   UNLIMITED CIVIL CASE

Plaintiffs David Leverage and Michael Lentini ("Plaintiffs") on behalf of themselves and all others similarly situated, hereby bring this Class and Collective Action Complaint against Defendants Traeger Pellet Grills, LLC and Xen 2, Inc., and on information and belief alleges as follows:

## JURISDICTION

1.      Plaintiffs, on behalf of themselves and all others similarly situated, hereby bring this class and collective action for recovery of unpaid wages and penalties under the Fair Labor Standards Act ("FLSA"), California Business and Professions Code §17200, *et. seq.*, California Labor Code §§ 204, 226 *et seq.*, 510, 558, 1194, 1198, 2698 *et seq.*, and California Industrial Welfare Commission Wage Order No. 7-2001 ("Wage Order 7"), in addition to seeking injunctive relief, declaratory relief and restitution.

2.      This Court has jurisdiction over Defendants' violations of the FLSA pursuant to 29 U.S.C. § 216 and 28 U.S.C. § 1331 because the action asserts rights arising under federal law. This Court has supplemental jurisdiction over Defendants' violation of the Labor Code sections set forth in the immediately preceding paragraph, California Business and Professions Code and Wage Order 7, because these claims derive from the same common nucleus of operative facts.

## VENUE

3.      Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within this district.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 2**

## PARTIES

4.      Plaintiff DAVID LEVERAGE is an individual over the age of eighteen (18). During the four year statute of limitations immediately preceding the filing of the Complaint in this action and within the statute of limitations periods applicable to each cause of action pled herein, Plaintiff Leverage was employed by Defendants as a misclassified non-exempt employee. Plaintiff was, and is, a victim of Defendants' policies and/or practices complained of herein, lost money and/or property, and has been deprived of the rights guaranteed to him by the FLSA, California Labor Code §§ 204, 226 *et seq.,* 510, 558, 1194, 1198, 2698 *et seq.*, California Business and Professions Code § 17200 *et seq.,* and Wage Order 7, which sets employment standards for the retail sales industry.  Plaintiff currently resides in Arizona, but is entitled to the protection of California law for those shifts worked within the State of California, as determined by the Ninth Circuit in *Sullivan v. Oracle Corporation*, 662 F.3d 1265 (9th Cir. 2011).

5.      Plaintiff MICHAEL LENTINI is an individual over the age of eighteen (18). During the four year period immediately preceding the filing of the Complaint in this action, Plaintiff was employed by Defendants as a misclassified non-exempt employee.  Lentini was employed by Defendants from approximately October 2012 through January 2014, and last worked in California on approximately February 17, 2013.  Plaintiff was, and is, a victim of Defendants' policies and/or practices complained of herein, lost money and/or property, and has been deprived of the rights guaranteed to him by the FLSA, California Labor Code §§ 204, 226 *et seq.,* 510, 558, 1194, 1198, 2698 *et seq.*, California Business and Professions Code § 17200 *et seq.,* and Wage Order 7, which sets employment standards for the retail sales industry.  Plaintiff currently resides in Texas, but is entitled to the protection of California law for those shifts

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 3**

worked within the State of California, as determined by the Ninth Circuit in *Sullivan v. Oracle Corporation*, 662 F.3d 1265 (9th Cir. 2011).

6.     Defendant TRAEGER PELLET GRILLS, LLC ("Traeger") is a Delaware corporation with its principal place of business located at 1215 E Wilmington Ave., Suite 200, Salt Lake City, Utah 84106.  It may be served through its registered agent for service of process within the State of California, Northwest Registered Agent, Inc., which is believed to be located at 1267 Willis St., Suite 200, Redding, CA 96001.  Traeger was Plaintiffs' *de facto* employer at all relevant times herein.

7.     Defendant Xen 2, Inc. ("Xenium") is an Oregon corporation with its principal office listed with the Secretary of State as 7401 SW Washo Ct., Suite 200, Tualatin, OR 97062. It may be served through its registered agent for service of process, National Corporate Research, Ltd., 600 Wilshire Blvd, Suite 980, Los Angeles, CA 90017.  Xenium is a staffing agency and/or payroll company, and was the Plaintiffs' W-2 employer for tax purposes until December 2013.

8.     Plaintiffs are informed and believe, and based thereon allege, that during the four years preceding the filing of the Complaint and continuing to the present, Defendants did and do business by providing in-store events, product demonstration services, and marketing services to Costco Wholesale vendors in Alameda County, California and the United States, and employed Plaintiff Leverage and other, similarly situated employees within Alameda County and, therefore, were and are doing business in Alameda County and the State of California. Traeger's web site shows six Costco shows planned in counties within the Northern District of California for February and March 2016 alone.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 4**

9.      Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants were licensed to do business in California and the Northern District of California, and were the employers of Plaintiffs and the Classes (as defined below).

10.     At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendants; and each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned were acting within the course and scope of said agency and employment. Defendants, and each of them, approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

11.     At all times mentioned herein, Defendants, and each of them, were members of and engaged in a joint venture, partnership, and common enterprise, and acting within the course and scope of and in pursuance of said joint venture, partnership, and common enterprise. Further, Plaintiff alleges that Defendants were joint employers for all purposes of Plaintiffs and all Class Members during the relevant periods until the co-employment agreement between Traeger and Xenium ended.

## FACTUAL ALLEGATIONS

12.     Plaintiffs have been employed by Defendants as "Direct Sales Demonstrators." Traeger manufactures and sells high performance grills in all fifty (50) states.  Traeger employed its demonstrators indirectly through Xenium, a staffing company, prior to some point during 2014, but directed and controlled its employees for purposes of its promotional efforts. Defendants jointly employ or employed over 100 roadshow demonstrators nationwide, including in California.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 5**

13.     Traeger "Direct Sales Demonstrators" are divided into at least two groups.
Demonstrators such as Plaintiffs were sent to wholesale clubs such as Costco (the "Wholesale
Group"). The Wholesale Group would typically be sent to Costco, be directed to set up a booth,
and then man the booth during working hours. Demonstrators would perform promotional
activities within the booth, but would not make any actual sales, or receive any direct customer
payments. Defendants did not pay demonstrators by the hour or on a salaried basis. Defendants
referred to the demonstrators' compensation as "commissions." Defendants calculated a
demonstrator's "commissions" based on sliding percentage of the net amount of sales and returns
of Traeger products during the roadshow after deducting amounts paid to Costco from the net
amount of sales and returns. Some of the returns were not individually tracked for commission
payments, so that compensation could be reduced by returns from stock purchased before the
road show began, or from other stores. Defendants deducted a flat 5% for anticipated returns in
the future, but did not render an accounting for the actual returns. The road shows typically
lasted 10 days straight not including travel, setup, and breakdown time, and were commonly
manned by a single demonstrator. However, more recently, Traeger has begun manning Costco
stores with two demonstrators, so that it is impossible to track sales or returns to a particular
employee within the Wholesale Group. In 2013, Traeger's Costco show days exceeded 10,000
nationally, with approximately 3,500 show days in California. During 2013, Traeger's Costco
sales approximated $30,000,000, with approximately $8,000,000 of that in California.

14.     Because Traeger considers the Wholesale Group to be "part time" employees, it
does not offer them any benefits such as health insurance, sick days, vacation days, etc.

15.     The Defendants also employed representatives, who were typically different sales
staff from the Wholesale Group, who made direct sales at trade shows, fairs, expos, conventions,

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 6**

and home shows (the "Direct Sales Group").  These individuals collected payment directly from purchasing customers, were provided credit card processing equipment, and tracked returns, which were offset from commissions.

16.     The final group of sales staff worked at essentially permanent kiosks within retail shopping centers to pitch Traeger products (the "Mall Group").  This group received customer payments, and was paid based on a recoverable commission.  Such employees were improperly classified as management employees, treated as "exempt," and not paid overtime.  However, the Mall Group "manager" and "assistant managers" were not paid a salary, generally had no full time hourly employees to manage, did not have any actual authority, and thus could not properly be classified as "exempt" for purposes of the FLSA.

## ROAD SHOWS

17.     Plaintiffs worked extremely long hours during the road shows.  Each show was typically, although not always, worked by only one demonstrator, who would work in excess of seventy hours per week, and sometimes over eighty.  Commissions earned varied from show to show, but commonly amounted to less than minimum wage for time spent.  Traeger paid a flat fee of $120 per day in the event no sales were made during the show.  Employees within the Wholesale Group worked typically over 100 hours over a ten day period for a ten day show.

18.     Plaintiffs were required to staff the booth at all times during regular Costco hours, which were typically 10:00 a.m. to 8:30 p.m. on weekdays, 9:30 a.m. to 6:00 p.m. on Saturday, and 10:00 a.m. to 6:00 p.m. on Sundays.  Plaintiffs were required to be on premises at least thirty (30) minutes before opening, and fifteen (15) minutes after closing.  This resulted in work days of 11.25 hours per day on weekdays, 9.25 hours on Saturdays, and 8.75 hours on Sundays.  Plaintiffs were not allowed either lunch breaks or 15 breaks during the shows.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 7**

19.     Plaintiffs were also required to set up the booth on the day before the show, which was typically a Thursday. Leverage and other demonstrators would typically take an early morning flight to the Costco store venue, spend three (3) hours in the afternoon assembling grills and counting inventory, and then return and spend 8 p.m. to 11 p.m. setting up the booth for the following day.  They also had to break down the booth and prepare it for shipping on the last day of the show, after the store closed.  This time was also uncompensated, and typically took at least four hours.

20.     Additionally, Plaintiffs were not compensated for travel time to or from Costco or other locations, but did have some of their travel expenses reimbursed.  Demonstrators were commonly sent out of state.  Travel time could easily take ten hours per day. The irony of this is that Plaintiff Lentini lived within driving distance of approximately eight (8) Costco locations while living in Texas, yet was rarely or never assigned to work a Costco show in his home state.

21.     Defendants failed to accurately keep records of time worked for Plaintiffs, and their paychecks would normally simply record 80 hours for a two week period regardless of the actual time worked, which could easily exceed seventy (70) hours per week. Nevertheless, actual time worked can be easily reconstructed from records of Costco store hours of operation, due to the requirement that Plaintiff tend to the booth at all material times during store hours. Time spent setting up or taking down booths can be reasonably estimated, and travel during normal work hours can be reconstructed from travel records or via reasonable estimates using mapping software.

22.     Because Plaintiffs did not actually consummate any sales directly while working in the Wholesale Group, but rather made promotional efforts for the benefit of Costco or other store sales, or in the alternative, for Internet sales directly from Traeger, the efforts of the

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 8**

Wholesale Group were non-exempt promotional work. *See* 29 C.F.R. §541.503. Traeger management frequently admitted that the principal beneficiaries of the demonstration work performed by Plaintiff were Traeger (due to direct sales over the Internet), the hosting store and local area Traeger dealers. Traeger instructed Costco demonstrators to promote local dealers within a 20 mile radius of the store, and instructed demonstrators to show a listing of all local Traeger dealers to every person they spoke to while in the booth, even though demonstrators would not be compensated for any sales made outside the assigned Costco venue. Traeger told its local dealers on page 31 of the Road Show Event Manual that:

> Our experience has shown us that introducing Traeger to a wider Costco audience has increased the overall dealer business in the area immediately surrounding the special event. While a Costco road show exposes Traeger grills to over 30,000 people over the 10 day period, only a small number of them actually purchase grills during the show. In fact, many local dealers have reported sales spikes in the weeks following a Costco show due to the increased awareness and demand created by the Costco show.

Demonstrators did not receive any commissions for sales made by local dealers. Plaintiffs also had no control over whether the customers even could check out, as Costco restricts sales to members only. Further, because Costco accepts only American Express, cash and debit cards, many members did not purchase high dollar items at the store, but rather bought from local dealers or online where they could use their credit cards.[1] The Wholesale Group was not paid any commissions for such sales. Because Defendants did not track returns on all of the products sold during promotional events, Defendants paid its demonstrators based only on net store sales (after deducting for amounts paid to Costco), and those net store sales frequently reflected returns of merchandise purchased at other stores or during a time period before the roadshow started. Traeger also required demonstrators to continuously promote Traeger's website in an effort to drive sales directly to Traeger, which effectively cut out both Costco and the

---

[1] Traeger estimated that only about 30% of Costco customers had an American Express card.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 9**

demonstrator from receiving any compensation based on such sales.  Demonstrators were never compensated for any sales they steered towards Traeger's website.  Traeger typically scheduled different employees to work subsequent shows in the same Costco store, and as a result, many sales derived from a demonstrator's previous promotional work would financially benefit other demonstrators. Wholesale Group members were threatened with immediate termination if they attempted to advertise or promote their scheduled Costco roadshow to the general public such as on Facebook or Craigslist. Traeger Executive VP Dan Grover announced on a weekly sales call that several demonstrators had been terminated for promoting their scheduled Costco roadshows on Facebook and/ or Craigslist.

23.     Traeger management routinely threatened termination if employees went outside the Costco for any non-emergency reason during store hours. Traeger's exclusive vendor contract with Costco specifies that the demonstration booth inside Costco has to be staffed at all times during Costco business hours. Traeger Executive Sales Manager Dan Grover stated to Michael Lentini: "You are never, ever allowed to leave the building. If you feel like you are having a bad day, take a quick 5 minute walk around the building. If you feel the need to take more than 1 walk per show, you need to go work somewhere else."

24.     The formula that Defendants used to compensate members of the Wholesale Group frequently resulted in payment of less than minimum wage. Members of the Wholesale Group never received overtime wages at a rate of one-and-a-half times a regular hourly rate for work in excess of 40 hours per week. Members of the Wholesale Group never received doubletime wages at a rate of two times a regularly rate for work in excess of eight hours on the seventh consecutive day of work in a workweek., Defendants classified the Wholesale Group as "exempt" for purposes of the Fair Labor Standards Act and California law under the "Outside

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 10**

Sales Exemption." For the reasons set forth below, this exemption does not apply to the

Wholesale Group.

      25.    The FLSA provides an exemption to overtime and minimum wage requirements

for "any employee employed … in the capacity of outside salesman (as such terms are defined

and delimited from time to time by regulations of the Secretary, …"). 29 U.S.C. §213(a)(1).

      26.    The Department of Labor has established rules defining the limits of the Outside

Sales Exemption. The General Rule provides:

**§541.500   General rule for outside sales employees.**

(a) The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:

    (1) Whose primary duty is:

        (i) making sales within the meaning of section 3(k) of the Act, or

        (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

    (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

(b) The term "primary duty" is defined at §541.700. In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

(c) The requirements of subpart G (salary requirements) of this part do not apply to the outside sales employees described in this section.

29 C.F.R. §541.500 (2015). Section 3(k) of the Act provides:

        (k) "Sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

29 U.S.C. 203(k).

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 11**

27. The Wholesale Group engaged in promotional efforts and did not make "sales" within the definition of section 3(k) of the Act.

28. Even if the Court were to indulge the presumption that the Wholesale Group was "making sales" under the FLSA, the Outside Sales Exemption fails under the test in Section 541.500(a)(2), because the roadshow booths are deemed to be the Employers' place of business under FLSA rules. DOL regulations provide:

**§541.502      Away from the employer's place of business.**

An outside sales employee must be customarily and regularly engaged "away from the employer's place or places of business." The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property. However, an outside sales employee does not lose the exemption by displaying samples in hotel sample rooms during trips from city to city; these sample rooms should not be considered as the employer's places of business. Similarly, an outside sales employee does not lose the exemption by displaying the employer's products at a trade show. If selling actually occurs, rather than just sales promotion, trade shows of short duration (i.e., one or two weeks) should not be considered as the employer's place of business.

29 C.F.R. §541.502.

29. The booths from which the Wholesale Group make their presentations appear to be a "fixed site" from which the demonstrations take place under federal regulations. The demonstration booth inside Costco is where all demonstrations and promotional efforts are completed. Other than travel, all work performed by the demonstrators is inside the demonstration booth. Such employees do not make any substantial sales or promotions at the customers' place of business or home. Defendants have pushed beyond the "trade show" exception within DOL regulations because the employees' principal duty was to sell at such

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 12**

locations on an ongoing basis, rather than as a short term alternative to convention sales where the salesperson largely controls their own activities.  On information and belief, the relationship with Costco has endured for many years, and Defendants maintain a presence in each Costco as part of an ongoing business relationship with Costco.

30.     Pursuant to long-standing rationales for exempting outside sales personnel, the Wholesale Groups has been misclassified.  As the court stated in *Jewell Tea Company v. Williams,* 118 F.2d 202, 207-08 (10th Cir. 1941):

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works [sic] individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

118 F.2d at 207-08.  The Wholesale Group employees have little resemblance to this description. Such employees do not set their own hours.  Instead, their hours are set by Defendants for the duration of grueling ten day shows at fixed locations.  Defendants know exactly what hours are expected to be worked from simply looking at the host store's schedule, because claimants must man the booth during open hours and must report to work 30 minutes prior to the store opening and 15 minutes after the store closing.  Even bathroom breaks are highly discouraged, and claimants are frequently contacted as a result of complaints from the host store if they take too long relieving themselves.  Travel between locations is planned and scheduled by Defendants, and therefore easily calculable.  Set up time before a show and break down time of the booth after a show are also easy to estimate.  In short, Defendants heavily control almost every aspect

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 13**

of the performance of claimants' job duties, and there is no reason to treat them as outside salesmen.

## TRAEGER MALL OPERATIONS

31.     In late 2012, Traeger began a program to install booths in high traffic shopping malls. By early 2014, Traeger was operating approximately 30 mall stores across the United States, including many in California.  Employees typically were either in the Wholesale Group or the Mall Group, but not both at the same time. Hundreds of employees worked in the mall stores from 2012 through 2015. Traeger management would lure unsuspecting Costco demonstrators into the mall management program with promises of full benefits such as health insurance, less hours, sleep in your own bed, more compensation, and more family time. Plaintiff Lentini worked for the Costco Group, then transferred to the Mall Group in mid-2013.

32.     Each mall store was set up to employ one "manager," one "assistant manager," and some part time hourly employees charged with promoting Traeger wood pellet grills. Defendants referred to the compensation paid to managers and assistant managers as a "draw against commissions," as evidenced by offer letters and paychecks to Lentini.

33.     Employees given the title of "manager" and "assistant manager" were required to man the mall stores at all times.  Mall hours varied, but a typical shopping mall was open approximately sixty-five (65) hours per week, and employees were required to do non-sales activities outside of normal store hours.  The "managers" and "assistant managers" typically worked in excess of seventy (70) hours per week.  Turnover was very high, and most stores were grossly understaffed.  Sometimes, only a single employee would work at a store, spending seventy to eighty hours per week at Traeger's mall store.  For example, from September to

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 14**

November 2013, Plaintiff Lentini was the nominal "manager" of the Oklahoma City mall store, and had to work six consecutive seventy (70) hour weeks without a single day off.

34.     Employees given the title of "managers" and "assistant managers" were not paid overtime.

35.     The compensation paid to "managers" was reduced to pay for part time help. Defendants described the compensation paid to "managers" as "per diems" and a draw against commissions, without mention of salary.  Regular and overtime hours were tracked for payroll purposes, but paid at a "0.00" rate.  "Managers" were charged back for missing or damaged inventory, missing receipts, bad debts, and other business expenses.

36.     Defendants treated Plaintiffs as "exempt" under the FLSA, though the exact rationale for the classification is unknown to Plaintiffs.  Defendants' policy of docking Plaintiff's compensation by the mall store's operating expenses destroyed any exemption, because docked compensation cannot be counted as "salary" to enable the executive or administrative exemptions. Specifically, regulations provide that:  "An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made … by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available." 29 C.F.R. §541.602; *see also Baden-Winterwood v. Life Time Fitness, Inc.,* 566 F.3d 618 (6th Cir. 2009)(employer could not recoup advanced bonus payments against salary when performance dropped).

37.     Department of Labor regulations provide that where an employer, as a part of a policy or practice, makes improper deductions from salary, the employer "shall lose the exemption".  29 C.F.R. §541.603(a).  Regulations provide: "the exemption is lost during the time

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 15**

period in which the improper deductions were made for employees in the same job classification

working for the same managers responsible for the actual improper deductions".

## CLASS ALLEGATIONS

38.     Plaintiff files this case as an "opt-in" collective action as specifically allowed by

29 U.S.C. § 216(b). The **FLSA Overtime Class** that Plaintiffs seek to represent are:

> (i)      All individuals who are or were employed by Defendants as a "Direct
>
> Sales Demonstrator" to sell Traeger products at any time during the
>
> preceding three years from the filing of this Complaint until the present
>
> and who were principally sent to wholesale clubs such as Costco (the
>
> "Wholesale Group").  Specifically excluded from the collective action are
>
> any individuals who spent more than twenty percent of their working days
>
> making direct sales at trade shows, fairs, expos, conventions, and home
>
> shows (the "Direct Sales Group"); and
>
> (ii)     All individuals who are or were employed as "managers" or "assistant
>
> managers" to work in fixed mall locations selling Traeger products within
>
> the preceding three years from the filing of this Complaint until to the
>
> present (the "Mall Group"), and who were classified as "exempt."

Plaintiff seeks to represent only those members of the above-described group who, after

appropriate notice of their ability to opt in to this action, have provided consent in writing to be

represented by the Plaintiffs as required by 29 U.S.C. § 216(b).

39.     This action is appropriate for collective action status because Defendants have

acted in the same manner with regards to all members of the Plaintiff class by misclassifying

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 16**

them as exempt employees, and failing to pay them overtime, doubletime, and/or the minimum wage.

40.    Plaintiffs further bring this action on behalf of themselves and the following Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

a.    The **California Overtime Class** consists of all Defendants' current and former Direct Sale Demonstrator employees in the FLSA Class who worked in California who were classified as exempt, and were not paid overtime, doubletime, or minimum wage, during the four years immediately preceding the filing of the Complaint through the present.

b.    The **Meal Period Class** consists of all Defendants' current and former employees in California who are members of the FLSA Class and, during the four years immediately preceding the filing of the Complaint through the present, worked within the State of California (a) more than six hours, but less than eight hours, but were not provided with two paid rest periods, and/or (b) more than ten hours, and were not provided with three paid rest periods .

c.    The **Rest Period Class** consists of all Defendants' current and former employees in California who are members of the FLSA Class and, during the four years immediately preceding the filing of the Complaint through the present, worked within the State of California (a) more than six hours, but less than eight hours, but were not provided with two paid rest periods, and/or (b) more than ten hours, and were not provided with three paid rest periods.

d.    The **Wage Statement Penalty Class** consists of members of the California Overtime Class, the Meal Period Class, and/or the Rest Period Class during

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 17**

the one year immediately preceding the filing of the Complaint through the

present who did not receive wage statements and/or wage calculations as

required under California law.

41.     **Numerosity:** The members of the Classes are so numerous that joinder of all

members would be unfeasible and not practicable. The membership of the classes and subclasses

are unknown to Plaintiff at this time; however, it is estimated that the Classes number greater

than three hundred (300) individuals as to each Class. The identity of such membership is readily

ascertainable via inspection of Defendants' employment records.

42.     **Common Questions of Law or Fact:** There are common questions of law and

fact as to Plaintiff and all other similarly situated employees, which predominate over questions

affecting only individual members including, without limitation:

      a.   Whether Defendants misclassified their employees as exempt under the

          FLSA;

      b.   Whether Defendants violated the FLSA by failing to pay for overtime,

          doubletime and/or minimum wage under the FLSA;

      c.   Whether Defendants violated the applicable Labor Code provisions including,

          but not limited to §§ 510 and 1194 by requiring overtime work and not paying

          for said work according to the overtime laws of the State of California;

      d.   Whether Defendants allowed proper meal periods, or in the alternative,

          correctly computed and paid meal period premium payments at the correct

          rate of pay for work performed in California;

    e.    Whether Defendants allowed proper rest periods, or in the alternative,

           correctly computed and paid rest period premium payments at the correct rate

           of pay for work performed in California; and

    f.    Whether Defendants' wage statements conformed to the requirements of

           Labor Code §226(a).

43.    **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendants' policies and/or practices applicable to each individual class member, such as their uniform method of calculating overtime payments for the members of the California and FLSA Overtime Classes. As such, these common questions predominate over individual questions concerning each individual class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

44.    **Typicality:** The claims of Plaintiffs are typical of the claims of the Classes because Plaintiffs were employed by Defendants as demonstrating employees in California and other stated within the United States during the last four years. As alleged herein, Plaintiffs, like the members of the Classes, were deprived of all overtime and premium wages, and were provided with insufficient leave time.

45.    **Adequacy of Representation:** Plaintiffs are fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Classes and Plaintiffs. Plaintiffs' attorneys have prosecuted and defended wage-and-hour

class actions in federal courts in the past and are committed to vigorously prosecuting this action on behalf of the members of the Classes.

46.      **Superiority:** The California Labor Code is broadly remedial in nature and serves an important public interest in establishing minimum working conditions and standards in California. Similarly, the FLSA is remedial in nature and serves an important public interest in establishing minimum working conditions and standards through the United States. These laws and labor standards protect the average working employee from exploitation by employers who have the responsibility to follow the laws and who may seek to take advantage of superior economic and bargaining power in setting onerous terms and conditions of employment. The nature of this action and the format of laws available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each employee were required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior financial and legal resources. Moreover, requiring each member of the Classes to pursue an individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to file an action against their former and/or current employer for real and justifiable fear of retaliation and permanent damages to their careers at subsequent employment. Further, the prosecution of separate actions by the individual Class Members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class Members against Defendants herein; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual Class Members which would, as a practical matter, be dispositive of the interest of the

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 20**

other Class Members not parties to adjudications or which would substantially impair or impede

the ability of the Class Members to protect their interests. Further, the claims of the individual

members of the Classes are not sufficiently large to warrant vigorous individual prosecution

considering all of the concomitant costs and expenses attending thereto.

47.     As such, the Rule 23 Classes identified in Paragraph 30 are maintainable as a

Class under Rule 23(b)(1) and/or Rule 23(b)(3).

**FIRST CLAIM**

**FAILURE TO PAY OVERTIME WAGES REQUIRED**
**BY THE CALIFORNIA LABOR CODE**

(Against All Defendants)

48.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set

forth herein.

49.     Defendants misclassified Plaintiffs and the California Overtime Class in the

Wholesale Group  as exempt under the Outside Sales Exemption.  This exemption, which is

more narrowly defined under California law than under federal law, was improperly applied

because Plaintiffs and the class members were principally engaged in promotional work, and

because they were engaged in promotional work at their employer's place of business, rather

than to consumers at their homes, or businesses at their place of business.

50.     Defendants misclassified Plaintiffs and the California Overtime Class in the Mall

Group as exempt under the executive or administrative exemption. This exemption was

improperly applied because Plaintiffs and the class members were not paid on a salaried basis

because operational business expenses were routinely deducted from their compensation.

51.     This cause of action is brought on behalf of the California Overtime Class pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198, which provide that hourly non-exempt employees are entitled to all overtime and doubletime wages and compensation for hours worked, and provide a private right of action for the failure to pay all overtime and doubletime compensation for overtime work performed.

52.     Plaintiffs and members of the California Overtime Class worked overtime hours and were not paid a premium overtime or doubletime rate, because they were improperly classified as exempt.

53.     At all times relevant herein, Defendants were required to properly compensate hourly non-exempt employees, including Plaintiff and members of the California Overtime Class, for all overtime hours worked pursuant to California Labor Code § 1194 and Wage Order 7. Wage Order 7, § 3 requires an employer to pay an employee "one and one-half (1½) times the employee's regular rate of pay" for work in excess of 8 hours per work day and/or in excess of 40 hours of work in the workweek. Wage Order 7, § 3 also requires an employer to pay an employee double the employee's regular rate of pay for work in excess of 12 hours each work day and/or for work in excess of 8 hours on the seventh consecutive day of work in the workweek.

54.     Defendants' policy and practice of requiring overtime work and not paying at the proper overtime rates for said work violates California Labor Code §§ 204, 210, 510, 558, 1194, and 1198, and Wage Order 7.

55.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiffs and members of the California Overtime Class in a civil action for the unpaid amount of overtime premiums owing, including interest thereon, statutory penalties, civil

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 22**

penalties, attorney's fees, and costs of suit according to California Labor Code §§ 204, 210, 510, 558, 1194, 1198, 2698 et seq., and Code of Civil Procedure § 1021.5.

## SECOND CLAIM

### FLSA VIOLATIONS

(Against All Defendants)

56.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

57.     This cause of action is brought pursuant to 29 U.S.C. § 207, which requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek, as well as minimum wage.

58.     Plaintiffs and members of the FLSA Overtime Class worked in excess of 40 hours per workweek, earned but were not paid overtime compensation, and received various forms of incentive pay, which are not exclusions when calculating the regular rate of pay.

59.     As a result of a policy or practice, Plaintiffs have been systematically misclassified as exempt under the Outside Sales Exemption, or under other exemptions. Thus, Defendants have failed to properly calculate and pay Plaintiffs and the FLSA Overtime Class members one and one-half times the regular rate of pay for all hours worked in excess of 40 per workweek.

60.     Defendants' policy and practice of requiring overtime work and not paying at the proper overtime rate for said work violates the FLSA's overtime requirements including, but not limited to 29 U.S.C. § 207.

61.     Defendants' policies and practices, as alleged, constitute a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 23**

62.     Defendants' policy and practice of failing to pay overtime for Plaintiffs and members of the FLSA Overtime Class creates an entitlement to recovery by Plaintiffs and members of the FLSA Overtime Class in a civil action for the unpaid amount of overtime premiums owing, including liquidated damages, attorneys' fees and costs, per 29 U.S.C. § 216 and interest thereon.

**THIRD CLAIM**

**MEAL PERIOD VIOLATIONS**

(Against All Defendants)

63.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

64.     Employers are required to provide employees working within the State of California for a period of more than five hours with "off-duty" meal breaks which comply with the following requirements: (1) The employer must relieve the employee of all duty; (2) the employer must relinquish control over all activities of the employee; (3) the employer must permit a reasonable opportunity to take an uninterrupted 30-minute break; and (4) the employer must not impede or discourage the employee from taking their 30-minute breaks.  *Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004 (2012).

65.     The law requires that: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." California Code of Regulations, Title 8, §11040.

66.     As a matter of policy and practice, Defendants failed to provide the requisite meal period(s) for members of the Meal Period Class by forcing them to remain at their booths during

the entire time that the hosting stores were open, which always exceeded five hours, and commonly exceeded ten hours.

67.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiff and members of the Meal Period Class in a civil action for the unpaid amount of meal period payments owing, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit according to California Labor Code §§ 210, 226.7, 512, 516, 558, and Civil Code §§ 3287(b) and 3289.

## FOURTH CLAIM

## <u>REST PERIOD VIOLATIONS</u>

(Against All Defendants)

68.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

69.     Wage Order 7-2001, § 12 and California Labor Code §§ 226.7, 516 and 558 establish the right of employees to be provided with a rest period of at least ten (10) minutes for each four (4) hour period worked, or major fraction thereof.

70.     Plaintiffs are informed and believe that Defendants failed to make rest periods available to non-exempt employees and maintained an unlawful, class-wide rest period policy by failing to provide suitable rest periods.

71.     As a result of Defendants' failure to make rest periods available to non-exempt employees and unlawful, class-wide rest period policy that fails to provide all required rest periods, as it fails to provide rest periods as required by the Wage Order, Plaintiffs and members of the Rest Period Class were not provided with all rest periods to which they were entitled under California law. Despite Defendants' violations, Defendants did not pay an additional hour of pay

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 25**

to Plaintiffs and the Rest Period Class at their regular rate of pay as required by Labor Code section 226.7.

72.     The foregoing policies and practices are unlawful and create an entitlement to recovery by Plaintiffs and members of the Rest Period Class in a civil action for the unpaid amount of rest period premiums owing, including interest thereon, statutory penalties, civil penalties, attorney's fees, and costs of suit according to California Labor Code §§ 226.7, 516, 558, and Civil Code §§ 3287(b) and 3289.

**FIFTH CLAIM**

**<u>WAGE STATEMENT PENALTIES</u>**

(Against All Defendants)

73.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

74.     Plaintiffs are informed and believe, and based thereon allege that, Defendants knowingly and intentionally, as a matter of uniform policy and practice, failed to furnish them and members of the Wage Statement Class with accurate and complete wage statements regarding their correct time worked, regular rates of pay, rates of overtime pay, corresponding hours worked at each rate of pay, correct meal period premium payments, total gross wages earned, and total net wages earned, in violation of Labor Code § 226.

75.     Under California law, employers are prohibited from making deductions to employee commissions or other compensation for losses that are beyond the control of the employee.  Commission deductions for products that are returned within a certain period of time are generally permissible if it is possible to identify the specific commission at issue and the employee who received that commission. This principle is codified in Section 8 of the Wage

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 26**

Orders, which provides: "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee."  The California Supreme Court has expressly held that an employer may not dock individual commissions for returns that cannot be traced to the sales person who sold the original item.  *Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109 (1995).

76.    Defendants, however, impermissibly deducted monies from commissions due Plaintiffs by applying a flat 5% charge for anticipated returns uncoupled for actual returns, and/or by deducting returns to the store for products sold outside of promotional events.

77.    Defendants' failure to furnish Plaintiffs and members of the Wage Statement Class with complete and accurate itemized wage statements resulted in actual injury, as said failures led to, among other things, the non-payment of all their overtime wages, meal and rest period payments, improper commission deductions, and deprived them of the information necessary to identify the discrepancies in Defendants' reported data.

78.    Defendants' failures creates an entitlement to recovery by Plaintiff and members of the Wage Statement Class in a civil action for all damages and/or penalties pursuant to Labor Code § 226, including statutory penalties, civil penalties, reasonable attorney's fees, and costs of suit according to California Labor Code §§ 226 and 226.3.

## SIXTH CLAIM

## UNFAIR COMPETITION

(Against All Defendants)

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 27**

79. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

80. Defendants have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of California Business and Professions Code § 17200 *et seq*., by: (a) failing to pay Plaintiff and members of the FLSA Overtime Class and the California Overtime Class all overtime wages owed; (b) failing to pay Plaintiff and members of the Meal Period Class and Rest Period Class all meal and rest period premium wages owed; and (c) knowingly failing to furnish Plaintiffs and members of the Wage Statement Class with accurate, lawful and complete wage statements in violation of Labor Code § 226.

81. Defendants' utilization of these unfair and/or unlawful business practices deprived Plaintiff and continues to deprive members of the Classes of compensation to which they are legally entitled, constitutes unfair and/or unlawful competition, and provides an unfair advantage over Defendants' competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable wage and hour laws.

82. Because Plaintiffs are victims of Defendants' unfair and/or unlawful conduct alleged herein, Plaintiffs, for themselves and on behalf of the members of the Classes, seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by the Defendants pursuant to Business and Professions Code §§ 17203 and 17208.

83. The acts complained of herein occurred within the last four years immediately preceding the filing of the Complaint in this action.

84. Plaintiffs were compelled to retain the services of counsel to file this court action to protect their interests and those of the Classes, to obtain restitution, and to enforce important

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 28**

rights affecting the public interest.  Plaintiffs thereby incurred the financial burden of attorney's fees and costs, which they are entitled to recover under Code of Civil Procedure § 1021.5.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray for judgment for themselves and for all others on whose behalf this suit is brought against Defendants, jointly and severally, as follows:

1. For an order certifying the proposed Classes;

2. For an order appointing Plaintiffs as representatives of the Classes;

3. For an order appointing Counsel for Plaintiff as Counsel for the Classes;

4. Upon the First Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 204, 510, 558, 1194, and 1198;

5. Upon the Second Claim, for compensatory, consequential, liquidated, general and special damages pursuant to 29 U.S.C. §§ 207 and 216;

6. Upon the Third Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 226.7, 512, 516, and 558;

7. Upon the Fourth Claim, for compensatory, consequential, general and special damages according to proof pursuant to Labor Code §§ 226.7 and 558;

8. Upon the Fifth Claim, for statutory penalties pursuant to Labor Code §226;

9. Upon the Sixth Claim, for restitution to Plaintiffs and members of the Classes of all money and/or property unlawfully acquired by Defendants by means of any acts or practices declared by this Court to be in violation of Business and Professions Code § 17200 *et seq.;*

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 29**

10. Prejudgment interest on all due and unpaid wages pursuant to California Labor Code §218.6 and Civil Code §§3287 and 3289;

11. On all causes of action, for attorney's fees and costs as provided by Labor Code §1194 *et seq.*, the FLSA, and Code of Civil Procedure §1021.5; and

12. For such other and further relief the Court may deem just and proper.

Dated: February 16, 2016.

Respectfully submitted,

KILGORE & KILGORE, PLLC

By:  /s/ *Christine A. Hopkins*
JOHN. H. CROUCH, IV[2]
TX State Bar No. 00783906
jhc@kilgorelaw.com
CHRISTINE A. HOPKINS
CA State Bar No. 240248
cah@kilgorelaw.com

KILGORE & KILGORE, PLLC
3109 Carlisle, Suite 200
Dallas, Texas 75204
(214) 969-9099 – Telephone
(214) 953-0133 – Facsimile

**ATTORNEYS FOR PLAINTIFFS,
THE CLASSES, AND
AGGRIEVED EMPLOYEES**

---

[2] Mr. Crouch will be submitting a Motion for Admission Pro Hac Vice shortly.

**Class and Collective Action Complaint, Case No. 3:16-cv-784 - 30**

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury with respect to all issues triable by jury.

Dated: February 16, 2016.

/s/ *Christine A. Hopkins*
Christine A. Hopkins