UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID LEVERAGE, et al.,

            Plaintiffs,

      v.

TRAEGER PELLET GRILLS, LLC, et al.,

            Defendants.

Case No. 16-cv-00784-KAW

**ORDER RE SUPPLEMENTAL BRIEFING ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

Re: Dkt. No. 74

The Court has reviewed Plaintiffs' motion for preliminary approval, and hereby orders the parties to provide a joint supplemental brief regarding the following issues. The supplemental briefing should be filed no later than **May 17, 2017**.

### A.    Attorney's Fees

Plaintiff's counsel intend to seek an award of 25% of the Gross Settlement Fund as the Fee Award, plus reimbursement of reasonable and actual expenses, not to exceed $60,000, as the Expense Award. (Settlement Agreement ¶ 98, Dkt. No. 74-1.) To assess the fee request, even for purposes of preliminary approval, the Court requires information as to the lodestar claimed, *i.e.*, the number of hours incurred in the case and the hourly rates claimed.

### B.    Range of Reasonableness

At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor v. Uber Techs., Inc.*,

1   201 F. Supp. 3d 1110, 1120-21 (N.D. Cal. 2016).  This determination "requires evaluating the

2   relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak

3   claim for relatively little, while it is not reasonable to settle a strong claim for the same amount."

4   *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-

5   LHK, 2014 WL 3917126, at \*4 (N.D. Cal. Aug. 8, 2014).  Furthermore, the Ninth Circuit has

6   recognized that where no class has been formally certified, "there is an even greater potential for a

7   breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must

8   withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest

9   than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *In re*

10  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Signs of collusion that

11  the Court must consider include: (1) whether counsel receives a disproportionate distribution of

12  the settlement, (2) where the parties negotiate a "clear sailing" provision for payment of attorneys'

13  fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to

14  revert to the defendants.  *Id.*

15      In the instant case, Plaintiffs bring employment misclassification claims, including claims

16  for unpaid minimum wage and overtime wages under the Fair Labor Standards Act ("FLSA") and

17  related state laws, as well as damages for meal and rest period violations, unlawful deductions,

18  inaccurate wage statements, and waiting time penalties under various state laws.  (Plfs.' Mot. at 1,

19  Dkt. No. 74.)  Plaintiffs also bring a California Private Attorneys General Act ("PAGA") claim.

20  (*Id.*)  The proposed settlement is for $2,850,000; once the attorney's fees ($712,500), costs

21  ($60,000), incentive award ($65,000), class administrative costs ($35,000), and PAGA penalty

22  ($66,666.67) are excluded, the net settlement fund is estimated to be $1,910,833.33.  (*Id.* at 19.)

23      Plaintiffs state that the "settlement represents a recovery of about 73% of the projected

24  expected recovery if this case were to proceed through certification and trial."  (Plfs.' Mot. at 10.)

25  The "projected expected recovery," however, includes substantial discounts based on asserted

26  risks of non-certification and loss on the merits.  (*Id.* at 11 (discounting the unpaid overtime claim

27  by 30% for risk of non-certification and an additional 60% for risk of losing on the merits), 12

28  (discounting the unpaid minimum wage claim by 30% for risk of non-certification and 40% for

2

1   risk of losing on the merits), 13 (discounting the deductions claim by 25% for risk of non-

2   certification and 55% for risk of losing on the merits), 14 (discounting the meal and rest periods

3   claim by 50% for risk of non-certification and 70% for risk of losing on the merits), 15

4   (discounting the waiting time penalties by 45% for risk of non-certification and 65% for risk of

5   losing on the merits, and discounting the wage statement penalties by 45% for risk of non-

6   certification and 70% for risk of losing on the merits).)  Thus, the "projected expected recovery"

7   after the discounts amounts to $3,915,444, whereas the full *verdict* value -- without discounts -- is

8   around $16,234,210.  The $2,850,000 settlement represents an 82% discount from the full verdict

9   value.

10      The Court finds that Plaintiffs have not adequately explained why an 82% discount is

11  warranted in this case.  For example, with respect to the meal and rest period claim, Plaintiffs

12  point to Defendants' argument that class members could take meal and rest periods whenever they

13  want, but cite no authority that shows this would defeat certification or the claim itself.  *But see*

14  *Benton v. Telecom Network Specialists, Inc.*, 220 Cal. App. 4th 701, 726 (2013) ("the fact that

15  individual inquiry might be necessary to determine whether individual employees were able to

16  take breaks despite the defendant's allegedly unlawful policy (or unlawful lack of a policy) is not a

17  proper basis for denying certification").  Plaintiffs also do not explain what risks of certification

18  exist as to the classification claim, or what facts exist to show that Brand Ambassadors at Costco

19  obtained nonbinding commitments from buyers.  (*See* Plfs.' Mot. at 7.)  Plaintiffs must fully

20  explain the risks of non-certification and losing on the merits for each of their claims, citing to

21  specific case law and facts, and why these risk warrant the proposed 82% discount.

22      ### C.  Settlement Formula

23      The Settlement provides for three classes: (1) the "California Class," which consists of

24  employees who worked for Defendants in California; (2) the "Non-California Rule 23 Class,"

25  which consists of employees who worked for Defendants in states outside of California under[1]

26

---

27  [1] These states are: Arizona, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho,
    Illinois, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri,
28  Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North
    Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, Virginia, Washington, West Virginia,

3

United States District Court
Northern District of California

1    whose laws Plaintiffs have alleged state-law claims in the proposed Fourth Amended Complaint;

2    and (3) the "FLSA Class," which consists of employees who worked for Defendants in all other

3    states. (Plfs.' Mot. at 2.) The California Class and Non-California Rule 23 Class are opt-out

4    classes, while the FLSA Class is an opt-in class. (*Id.*)

5            Outside of California, the states are distributed into two tiers. "Tier 1 States" are Arizona,

6    Colorado, Florida, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Nevada, New Mexico,

7    New York, Oklahoma, Oregon, and Washington. (Settlement Agreement ¶ 49.) Tier 1 States "are

8    states whose state law claims alleged in the Complaint (and released under the Settlement) afford

9    protections greater than the FLSA, but not as protective as California." (Plfs.' Mot. at 3.) "Tier 2

10   States" are all remaining states and the District of Columbia. (Settlement Agreement ¶ 51.) These

11   two tiers do not match up with the Non-California Rule 23 Class and the FLSA Class; the Non-

12   California Rule 23 Class includes states outside of the Tier 1 States. (*See* Settlement Agreement

13   ¶¶ 31 (listing states included in the Non-California Rule 23 Class), 49 (listing states included in

14   Tier 1).)

15           In distributing the Settlement fund, the Settlement Administrator is to calculate the "Base

16   Weekly Payment," which is based on the number of weeks worked by all participating class

17   members. (Settlement Agreement ¶ 86(a).) California Class members will receive a settlement

18   payment equal to 2.2 times the Base Weekly Payment, multiplied by the number of weeks worked

19   by that individual. (Settlement Agreement ¶ 86(b).) Individuals in Tier 1 States will receive a

20   settlement payment equal to 1.3 times the Base Weekly Payment, multiplied by the number of

21   weeks worked by that individual. (Settlement Agreement ¶ 86(b).) Finally, individuals in Tier 2

22   States will receive a settlement payment equal to the base Weekly Payment, multiplied by the

23   number of weeks worked by that individual. The multiplier is based on the greater protections and

24   remedies available to individuals who work in California and Tier 1 states. (Settlement

25   Agreement ¶ 86(b).)

26           The parties must explain how the 2.2 and 1.3 multipliers were chosen. The parties should

27

28   _____

Wisconsin, and Wyoming. (Settlement Agreement ¶ 31.)

1      also explain whether individuals who are in both the Tier 2 States and the Non-California Rule 23

2      Class should be entitled to a multiplier, as they are giving up additional state law claims that

3      individuals who are in both the Tier 2 States and the FLSA Class are not.

4          **D.    *Cy Pres***

5          "The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions

6      of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*,

7      663 F.3d 1034, 1036 (9th Cir. 2011).  Thus, a *cy pres* distribution "must account for the nature of

8      the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class

9      members, including their geographic diversity." *Id.*  The Ninth Circuit has cautioned that "[w]hen

10     selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the

11     silent class members, the selection process may answer to the whims and self interests of the

12     parties, their counsel, or the court." *Id.* at 1039.

13         Here, the proposed settlement will donate any uncashed settlement compensation from the

14     Settlement Fund to The Road Home, "a charity that assists individuals with stepping out of

15     homelessness, including by providing employment . . . ." (Plfs.' Mot. at 21.)  The parties must

16     explain how the proposed *cy pres* distribution: (1) addresses the objectives of the Fair Labor

17     Standards Act and other labor laws at issue, (2) targets the Plaintiff class, including their

18     nationwide geographic distribution, and (3) provides a reasonable certainty that any member will

19     be benefited. *See Nachshin*, 663 F.3d at 1040.  The parties shall also address whether uncashed

20     settlement compensation from the Settlement Fund should be re-distributed to the class if above a

21     certain amount, *i.e.*, $100,000.

22         **E.    Incentive Payments**

23         The Settlement proposes incentive payments of $20,000 each to Plaintiffs Lentini and

24     Leverage, $10,000 each to Plaintiffs Dana and Benhardus, and $5,000 to Plaintiff Powell.

25     (Settlement Agreement ¶ 46.)  "It is well-established in this circuit that named plaintiffs in a class

26     action are eligible for reasonable incentive payments, also known as service awards." *Harris v.*

27     *Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at \*6 (N.D. Cal. Feb. 6, 2012)

28     (internal quotation omitted).  "Several courts in this District have indicated that incentive

5

1   payments of \$10,000 or \$25,000 are quite high and/or that, as a general matter, \$5,000 is a

2   reasonable amount." *Id.* at \*7.  While Plaintiffs have provided declarations explaining the amount

3   of time and work they have put into this case, the Court requires additional briefing on whether the

4   work performed warrants the requested incentive awards, particularly when this district has

5   typically considered \$5,000 to be the benchmark amount.

6   **F.     Procedures for Objecting to the Settlement**

7       The Settlement requires that objections be submitted to the Court "either by mailing them

8   to the Class Action Clerk,[2] United States District Court for the Northern District of California,

9   Oakland Courthouse . . . or by filing them in person at any location of the United States District

10  Court for the Northern District of California."  (Settlement Agreement ¶ 72.)  The Court will

11  require that objections be sent to the Settlement Administrator, and that the parties file any

12  objections with the court no later than fourteen (14) days before the final approval hearing.  The

13  parties shall revise the notices to the class members accordingly.

14  **G.     Class Action Fairness Act ("CAFA") Notice**

15      CAFA requires that notice of a settlement be given to the appropriate government officials.

16  28 U.S.C. § 1715(b).  The parties should address whether CAFA notice was given.

17  **H.     Class Notice (Exhibit B-1 of Settlement Agreement)**

18          **i.     Overall Summary of Settlement Payments (Page 3)**

19      This section indicates that Tier 1 members will receive 1.5 times the base weekly payment,

20  while California class members will receive 2.5 times the base weekly payment.  This is

21  inconsistent with the Settlement Agreement, which provides that Tier 1 members will receive 1.3

22  times the base weekly payment, while California Class members receive 2.2 times the base weekly

23  payment.  (Settlement Agreement ¶ 86.)

24          **ii.     What Do I Release Under the Settlement? (Page 5)**

25      This section lists claims that will be released under the Settlement.  This section should

26  also make clear that claims related to retaliation or for violation of equal pay provisions are

27

28
_____
[2] The Court does not have a "Class Action Clerk."

6

1  excluded. (Settlement Agreement ¶¶ 40-42.)

2  **iii.   How Do I Object to the Settlement? (Page 6)**

3  The objection procedure should be updated so that objections are submitted to the

4  Settlement Administrator, not the Court. Further, the objection procedure must make clear that the

5  objection needs to "be accompanied by any documentary or other evidence and any factual or

6  legal arguments that the objecting Participating Class Member intends to rely upon in making the

7  objection," as required by the Settlement terms. (Settlement Agreement ¶ 72.)

8  **iv.   How Do I Opt Out of the Settlement? (Page 6)**

9  The notice states that if an individual submits an exclusion letter and an objection, the

10  "objection will be valid and be deemed to invalidate the Exclusion Letter." The parties should

11  explain why this is appropriate, including citations to other cases that have found an objection to

12  invalidate a request to be excluded.

13  **v.   Where Can I get Additional Information? (Page 7)**

14  This section lists the website that will be available to class members. The parties shall

15  confirm that the website will include the Settlement, Notice of Settlement, FLSA opt-in form,

16  motions for approval (both preliminary and final) and for attorney's fees, as well as the operative

17  complaint and significant Court orders.

18  **I.   FLSA Notice (Exhibit B-2 of Settlement Agreement)**

19  **i.   What Do I Release Under the Settlement? (Page 5-6)**

20  This section lists claims that will be released under the Settlement. This section should

21  also make clear that claims related to retaliation or for violation of equal pay provisions is

22  excluded. (Settlement Agreement ¶¶ 40-42.)

23  **ii.   How do I Object to the Settlement? (Page 6)**

24  The objection procedure should be updated so that objections are submitted to the

25  Settlement Administrator, not the Court. Further, the objection procedure must make clear that the

26  objection needs to "be accompanied by any documentary or other evidence and any factual or

27  legal arguments that the objecting Participating Class Member intends to rely upon in making the

28  objection," as required by the Settlement terms. (Settlement Agreement ¶ 72.)

1    The objection procedure also indicates that an individual who objects will be bound by the

2    settlement agreement.  The parties should explain why this is appropriate, and cite to cases which

3    have deemed an objection to be an opt-in to a FLSA collective action.

4           IT IS SO ORDERED.

5    Dated: May 2, 2017

6                                                            _____
                                                             KANDIS A. WESTMORE
7                                                            United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California